UNITED STATES *v.* PHILIPP WIRTH ET AL. (No. 4013)[1]
PHILIPP WIRTH ET AL. *v.* UNITED STATES (No. 4014)

United States Court of Customs and Patent Appeals, November 2, 1936

*Lamb & Lerch* (*Thomas J. McKenna* of counsel) for Philipp Wirth et al.
*Joseph R. Jackson*, Assistant Attorney General (*Thomas J. Kavanagh*, special attorney, of counsel), for the United States.

[Oral argument October 7, 1936, by Mr. McKenna and Mr. Kavanagh]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

These are cross appeals in a reappraisement proceeding, and this is the third time that the case has come before this court. For con-

[1] T. D. 48654.

venience in statement, *Wirth et al.* will be treated as the appellants throughout this opinion.

The imported goods are filters and filter parts manufactured in, and exported from, Germany during the years 1925 to 1930, inclusive. All were imported under the Tariff Act of 1922, at various ports of the United States. They were appraised by the local appraisers upon the basis of their foreign value. Upon appeal to reappraisement by the importers, the trial court found the goods to be dutiable on the basis of their foreign value. Upon appeal, this finding of the trial court was affirmed by the appellate division of the United States Customs Court. It was conceded that there was no export value of the merchandise.

Upon appeal to this court the judgment of the appellate division was reversed, this court holding that the record disclosed there was no foreign value for the merchandise, and the cause was remanded with the suggestion that the division remand the case to the trial court in order that the parties might have an opportunity to present evidence of United States value or cost of production, as the facts might warrant. *United States* v. *Philipp Wirth et al.*, 20 C. C. P. A. (Customs) 94, T. D. 45705.

Thereafter a new trial was had before Judge Dallinger, and much testimony was offered, including several affidavits and reports of Customs and Treasury representatives, bearing upon the question of the United States value and cost of production of the imported goods. Thereafter, upon the record made, the trial judge made a finding that there was no United States value of the imported goods established, but that cost of production was shown by such record, and he found such cost to be the unit invoice price less certain stated percentages. Judgment was entered accordingly, and from such judgment the Government appealed. The First Division of the Customs Court heard the said appeal, reversed the judgment of the trial judge, and remanded the cause to him with instructions to dismiss the appeals to reappraisement. Said appellate division in its decision found that the trial judge properly held that there was no United States value shown for the goods, and also held that no cost of production, as required by section 402 of the Tariff Act of 1922, was shown by the record.

Cross appeals were taken to this court from said judgment of the appellate division, and after hearing, while affirming the finding that no United States value of the merchandise was shown by the record, we reversed the judgment appealed from and remanded the cause to said court with instructions to make findings as to costs of production, if any such cost be shown by the record, in conformity with the views expressed in the opinion of this court. *Wirth et al.* v. *United States*, 23 C. C. P. A. (Customs) 283, T. D. 48144.

It will be observed from our opinion in the last above cited case that, as we construed the decision of the First Division of the Customs Court, it was based, insofar as its finding upon the subject of cost of production was concerned, wholly upon an erroneous construction of paragraph 1 of section 402 (e) of the Tariff Act of 1922, the division holding that said paragraph *required* the separate itemization of cost of materials, fabrication, manipulation or other process. In other words, as we construed the said decision, even though the court was satisfied that all of the elements enumerated in said paragraph were correctly shown in the aggregate, nevertheless the statute had not been complied with because said elements were not itemized. This we held to be error, holding that said itemization was not *required* by the statute.

Upon the cause being remanded from this court to the Customs Court, the case was again considered by said division with the result that again judgment was rendered remanding the cause to the trial judge with instructions to dismiss the appeals to reappraisement.

From such judgment the cross appeals now before us were taken.

It is the contention of appellants that the appellate division of the Customs Court committed reversible error in declining to give probative weight to appellants' Exhibit 12, being an affidavit with an exhibit thereto attached.

While the Government is content with the judgment rendered by the appellate division, it has cross appealed upon the theory that, even though the court erred in declining to give to said affidavit probative weight, it should have found other facts upon which it should have concluded that there was no substantial evidence in the record of the cost of production of the merchandise involved.

Said Exhibit 12, introduced by appellants, exclusive of the exhibit thereto attached, reads as follows:

GERMAN REICH, STATE OF PRUSSIA, CITY OF COLOGNE,
  *Consulate of the United States of America, ss:*

Carl Weichel, being duly sworn, deposes and says that he is connected with the firm of Seitz-Werke of Bad Kreuznach, Germany, in the capacity of legal advisor and general supervisor of the business of this concern since the 4th day of July 1929; that in this capacity, he has charge of the cost records of the firm of Seitz-Werke and has had since he came with this Company, and also is in possession of the cost records of this Company as kept by his predecessors from the present time back to 1926, there being no detailed records for the year of 1925 and prior thereto relative to the repartition of costs, that he has taken from the records in his possession, which records he knows to be the accurate Company records of costs, the cost of labor, material, fabrication, manipulation, or other process employed in manufacturing or producing the merchandise shipped to Philipp Wirth, Inc., our agents in the United States, together with usual general expenses, which costs and expenses are set forth in Exhibit "A" attached hereto; that there has been engaged in competition with Seitz-Werke in the markets of Germany, selling identical material to that sold by Seitz-Werke and to that covered by Exhibit "A", hereto

attached, two competitors known as Clarit Werke and Peska Union, that they were engaged in this business covering the periods of from 1925 to 1929, respectively 1925 to 1931, and that the prices realized by these firms on filters and materials of the same class and kind, the subject of shipments to Philipp Wirth, Inc., were 10% below the prices obtained by Seitz-Werke; that he knows this to be true of his own knowledge by reason of the assurance of the former managers of the two firms—Seitz-Werke not being in possession of any books nor records permitting a verification of the calculation of these firms; that the usual general expenses of his concern, Seitz-Werke, for the period of 1926 to date on the class or kind of machines and material shipped to Philipp Wirth, Inc., is as shown on Exhibit "A".

That since the 31st day of December 1929, respectively the 1st of January 1931, the dates we acquired Clarit Werke and Peska Union, there has been no competitor covering the class or kind of merchandise in Germany shipped by us to Philipp Wirth, Inc., so that there are no available figures showing the general expenses or profits of the firms engaged in the same class or kind of industry, available since that date; that since the dates that we acquired Clarit Werke and Peska Union, the profits of his firm, Seitz-Werke, on the line of merchandise enumerated in Exhibit "A" has been for

1929—28.4%
1930—24.5%
1931—26%
1932—26.5%

of the cost of material, fabrication, manipulation as stated in column 2 of Exhibit "A"; that the figures, the subject of this affidavit cover machines and material produced and sold in Germany, which are in every respect identical to those shipped to Philipp Wirth, Inc., of the United States.

That he knows all of the above facts to be true of his own knowledge since he is familiar not only with the German trade, but with all of the machines and material shipped to Philipp Wirth, Inc., together with all other agents of Seitz-Werke, throughout the world.

CARL WEICHEL.

Sworn to and subscribed before me this 10th day of February, 1933.

[SEAL]                                        E. S. PARKER,
*Vice Consul of the United States of America.*

Exhibit "A" attached to said Exhibit 12, purports to set forth, in tabulated form, the cost of production of the merchandise here involved, in five separate columns, as follows: (1) "Name of Machines or Materials," (2) "Cost of Materials, Fabrication, Labour, Manipulation or other Processes," (3) "Cost of Containers, Coverings, and all other packing costs," (4) "Percentage of usual general expenses based on Col. 2," (5) "Percentage of net profit based on Col. 2."

The decision of the appellate division of the Customs Court, after quoting said Weichel affidavit, exclusive of Exhibit "A" attached thereto, states:

From the reading of the foregoing it is evident that there is no showing as to whether Mr. Weichel ever made or had any actual contact in the making of the cost records he used in preparing Exhibit 12 prior to the time he took therefrom the figures set forth in the exhibit attached to the affidavit. In the absence of other connection the fact that he had charge of such records does not entitle his statements, and calculations concerning them, to any weight with reference to

their accuracy, and, indeed, in Exhibit 18 it is shown that Exhibit 12 is based upon information furnished to the affiant either by other persons or taken from records not made or kept by him.

It is to be noted further, that as to the records of the firm kept prior to Mr. Weichel's connection therewith beginning July 4, 1929, he based his affidavit entirely upon information furnished to him by other persons or taken from records kept by his predecessors, as to the accuracy of which he does not pretend to have had any personal knowledge.

When the affidavit was offered in evidence below numerous objections were made by counsel for the Government to its being admitted, particularly on the ground of incompetency, but it was nevertheless admitted and exception was taken and allowed as to such admission.

Upon review, we find that there was no error on the part of the trial court in admitting the affidavit, the objections of the Government going to the weight to be given to it rather than to its admissibility, but for the reasons stated above we find it insufficient upon which to base a finding of cost of production of the merchandise involved, even when considered with Exhibits 13, 14, and 18, which in detail may be described as follows:

Exhibit 13 is, as stated above, a supplementary affidavit connecting up certain invoice designations with information given in Exhibit 12.

Exhibit 14 is a report of Treasury Representative Kruszewski dated September 20, 1933, which details the method used in arriving at the figures given in the affidavit, Exhibit 12, for general expenses and profits.

Exhibit 18, also a report of Treasury Representative Kruszewski, dated May 15, 1933, purports to be a check on the figures submitted in the affidavit, Exhibit 12. Examination of this report shows that Mr. Kruszewski was asked to verify the figures given in Exhibit A attached to Exhibit 12 for five items. In reply thereto he stated in part:

It will be noted that the figures given on page 2, column 2, covering "Furka" filters Nos. I to V for the years from 1926 to 1932, vary slightly. In order to show the office of the Assistant Attorney General in New York how the manufacturer figures the cost of materials, fabrication, labor, manipulation, or other processes, there are furnished below such figures for the year 1931, for which complete records were still on file.

Following that statement are details taken from the cost of production records described above of the elements entering into the cost of production of such "Furka" filters for the year 1931.

There are no shipments involved in the cases before the court which were made during the year 1931, and while it is noted that according to Exhibit 12 there was not much variation in the figures given concerning "Cost of materials, fabrication, labor, manipulation, or other processes" of the "Furka" filters I to V, it is apparent that there was considerable variation in the figures submitted for other apparatus, hence we can not accept the figures given for the year 1931 as establishing the statutory cost of production of the items involved for the years 1925 to 1930.

It is the contention of appellants that the record shows that said Exhibit 12 was based wholly upon the books of account kept by the manufacturer of the merchandise, that upon the record before the court said books would have been admissible in evidence, and that it was not necessary for the affiant, Weichel, to have had any actual contact in the making of the cost records he used in the preparation of said Exhibit 12, as held by the appellate division. Appellants

especially contend that the appellate division committed error in stating, with respect to the Weichel affidavit, as follows:

\* \* \* In the absence of other connection the fact that he had charge of such records does not entitle his statements, and calculations concerning them, to any weight with reference to their accuracy, and, indeed, in Exhibit 18 it is shown that Exhibit 12 is based upon information furnished to the affiant either by other persons or taken from records not made or kept by him.

Appellants further contend that if Weichel had been a witness upon the stand he would have been competent to testify as to all matters and conclusions set out in the affidavit, Exhibit 12.

With respect to the contention that the records upon which Exhibit 12 purports to be based would have been admissible in evidence upon the mere fact that affiant was in charge of the cost records, appellants rely upon a line of decisions which are summed up in Wigmore on Evidence, section 1530, holding in effect that account books are admissible in evidence if the books were verified on the stand by a supervising officer who knew them to be the books of regular entries kept in the establishment.

A study of the reported cases discloses that there is much conflict of authority with respect to the proof necessary to make books of account admissible in evidence. In many States such proof is regulated by statute.

It appears that the holding of the appellate division in the case at bar, that the mere fact that the affiant Weichel had charge of the cost records of the manufacturer does not entitle his statements respecting their contents to weight, is in accord with the rule approved by this court in the case of *United States* v. *Brown & Co.*, 4 Ct. Cust. Appls. 102, T. D. 33374, wherein it was said:

\* \* \* A difficulty with the importers' contention is found in the fact that the testimony offered was that of the manager of the steamship companies, who produced his books showing the entries of certain wantage in these cases, purporting to have been made by clerks on the wharves upon the statement of the coopers who opened the cases and made notations on the packages. It is not claimed by the witness who was produced that he had any personal knowledge of the facts, and there was no witness offered who had such personal knowledge. Nor was their absence accounted for by showing their death, absence from the jurisdiction, or other disability. The books were not under these circumstances without corroboration admissible as substantive proof of the fact of wantage in these cases. See Chaffee *v.* United States (85 U. S. 516, 539 *et seq.*)

The case cited in the above quotation also fully sustains the view of the First Division of which the appellants complain. In said case the court, with reference to certain books involved, said:

\* \* \* Their admissibility must, therefore, be determined by the rule which governs the admissibility of entries made by private parties in the ordinary course of their business.

And that rule, with some exceptions not including the present case, requires, for the admissibility of the entries, not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead, or insane, or beyond the reach of the process or commission of the court. The testimony of living witnesses personally cognizant of the facts of which they speak, given under the sanction of an oath in open court, where they may be subjected to cross-examination, affords the greatest security for truth. Their declarations, verbal or written, must, however, sometimes be admitted when they themselves cannot be called, in order to prevent a failure of justice. The admissibility of the declarations is in such cases limited by the necessity upon which it is founded.

The rule thus stated was relied upon by the Circuit Court of Appeals, Ninth Circuit, in the very recent case of *Wilkes et al.* v. *United States,* 80 F. (2d) 285.

However, assuming that the books of account of the manufacturer of the involved merchandise would, on the record before us, be admissible in evidence, we nevertheless are of the opinion that the appellate division did not commit reversible error in holding that Exhibit 12 is insufficient upon which to base a finding of cost of production of the merchandise involved, even when considered with Exhibits 13, 14, and 18.

It affirmatively appears from the record that there were no books of account or other records of the manufacturer separately showing its general expenses and profit.

It will be observed that the appellate division in its decision stated that Exhibit 18 shows that "Exhibit 12 is based upon information furnished to the affiant either by *other persons* or taken from records not made or kept by him." [ Italics ours.] Said Exhibit 18 is a report made by a Treasury representative. It appears therefrom that a Mr. Seitz, president of the company which manufactured the involved merchandise, was asked what assistance the affiant Weichel had in preparing the exhibit attached to and made a part of Exhibit 12. He answered as follows:

\* \* \* The preparation proper was in the hands of Mr. Carl Weichel. He was assisted by data furnished by manager Reininger, in charge of the bookkeeping section, by Mr. Juenger, chief of the calculation department, and in regard to the packing charges, by the forwarding department.

Question 1 (c): Were the working sheets from which the tabulation was prepared, retained?

Answer: Except for the packing charges which were taken from original invoices, working sheets were retained by Mr. Weichel.

It thus appears that Weichel did not obtain his information solely from the regular books of account of the manufacturer, but from other persons as well, as stated by the appellate division. Therefore, even if the theory of appellants be assumed to be correct, that Weichel was competent to testify as to the contents of such books of the manufacturer, it affirmatively appears that the statements made in

said Exhibit 12 were not secured solely from such books, but in part from other persons.

Appellants contend that the appellate division ignored the testimony of one Seitz upon the trial before the single judge. Said Seitz was the president of the company manufacturing the merchandise, being the same person hereinbefore referred to as mentioned in Exhibit 18. Appellants contend that the action of the appellate division in ignoring his testimony constitutes reversible error upon the part of the appellate division. With respect to this contention we find in the decision of the appellate division the following:

After carefully reviewing and weighing all of the evidence in the record offered with the view of establishing cost of production, we find as a fact (4) that it is wholly insufficient to establish the cost of production of the merchandise in issue within the meaning of subsection (e) of section 402, *supra*, and that therefore the court below erred in holding that such cost of production of the involved merchandise was established.

Moreover, we have carefully examined the testimony of said Seitz and we find nothing therein establishing the cost of production of the merchandise here involved, and insofar as it may be construed as tending to show that the exhibit attached to Exhibit 12 was prepared wholly from the books of the company, the appellate division was not bound to accept such testimony as true in view of the statements to the contrary contained in Exhibit 18.

Therefore, assuming again that the books of the manufacturer of the merchandise would have been competent evidence in the case upon the showing made in the record, we cannot hold that there is no substantial evidence in the case to support the finding of the appellate division that said exhibit attached to Exhibit 12 was not prepared wholly from the books of account of the manufacturer.

Finally, we have repeatedly held that the weight to be attached to affidavits and reports of consular agents in reappraisement proceedings is exclusively a matter for determination by the Customs Court. *United States* v. *Ash et al.*, 22 C. C. P. A. (Customs) 395, T. D. 47401, and cases cited therein.

It appears from the record herein that the appellate division did weigh Exhibit 12 and found that it, when considered with the other evidence in the record, was not entitled to weight with reference to the accuracy of the tabulations attached to said exhibit, nor was such accuracy established by other evidence in the case. As hereinbefore indicated, we find no reversible error in such finding.

We do not wish to be understood as holding that the Customs Court may arbitrarily and without reason decline to give weight to affidavits in reappraisement proceedings. Presumably that will never be done, and certainly it has not been done in the case at bar.

For the reasons stated herein the judgment of the Customs Court, First Division, is *affirmed*.